UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAHAN K. EPPS,

    Petitioner,

v.                                                    Case Number 08-10399-BC
                                                     Honorable Thomas L. Ludington

BLAINE LAFLER,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

On January 8, 2008, Petitioner Jahan K. Epps filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is presently confined at the Carson City Correctional Facility in Carson City, Michigan. In the Wayne County Circuit Court, a jury convicted Petitioner of second-degree murder. *See* Mich. Comp Laws § 750.317. Petitioner received a sentence of eighteen to thirty-six years imprisonment. Petitioner alleges that the trial court violated his constitutional rights by admitting his confession into evidence. On August 7, 2008, Respondent filed a response, asserting that Petitioner's claim lacks merit. Petitioner has not shown that the trial court violated his constitutional rights, therefore, his petition will be denied.

I

Petitioner was convicted of killing his girlfriend in Detroit, Michigan, on July 14, 2004. Prior to trial, Petitioner moved to have his confession suppressed, arguing that the statement had

been coerced and was involuntary. On March 11, 2005, a *Walker*[1] hearing was conducted on Petitioner's motion to suppress.

At the hearing, Sergeant Meisel testified that, on the day of Petitioner's confession, she met Petitioner at his workplace at approximately noon and that he agreed to accompany her and another officer to police headquarters. Petitioner was not handcuffed during the ride to police headquarters. At police headquarters, Petitioner was advised of his constitutional rights. Meisel testified that Petitioner did not appear to be under the influence of alcohol or drugs and that he did not appear to have any difficulty understanding her.

Meisel and Petitioner spoke for approximately two hours. Petitioner denied committing the murder. Petitioner was offered food and drink and Meisel testified that Petitioner did not appear to be fatigued or sick. Based on Petitioner's reactions to her questioning, Meisel asked Investigator Barbara Simon to interview Petitioner.

Simon testified that she began interviewing Petitioner at about 4:50 p.m. Simon advised Petitioner of his *Miranda* rights and required Petitioner to read each right out loud before initialing each right and signing the Detroit Police Department's advice of rights form. Simon testified that Petitioner waived his rights and gave a formal statement. Simon testified that Petitioner appeared to be of above average intelligence and was articulate. Simon asked Petitioner what he knew about the murder of his girlfriend. Petitioner told Simon that after he and the victim argued over her infidelity, Petitioner choked her until she passed out and stopped breathing. Petitioner informed Simon that he then disposed of the victim's body by placing it in his car and driving to a vacant lot, where he laid the victim on the ground and removed her clothing to make it appear that she had been

---

[1] *People v. Walker*, 132 N.W.2d 87 (Mich. 1965).

raped and killed.

In his statement, Petitioner indicated that he had not been promised anything in exchange for making his statement. Petitioner signed after each question and answer, including his answer that he had not been promised anything in exchange for making his statement to the police. Simon denied making any promises to Petitioner in exchange for his statement. Simon specifically denied promising Petitioner that if he confessed, he would only be charged with voluntary manslaughter and receive a sentence of lifetime probation, as opposed to being charged with first degree murder and receiving a life sentence.

Petitioner testified that four police officers, as opposed to two, had arrived at his workplace. Petitioner admitted going to police headquarters voluntarily. Petitioner talked with Meisel for approximately one hour, during which she never asked him about what had happened to the victim. Petitioner testified that another officer began making small talk with him, but that the small talk included theories as to what had possibly happened to the victim. This conversation lasted about forty-five minutes to one hour. Petitioner admitted using the restroom during this time.

Petitioner testified that he spoke to investigator Simon for about ninety minutes before being advised of his rights. Petitioner testified that Simon gave him an advice of rights form to look over. Petitioner initialed several of the paragraphs and signed his name, because Simon had explained to him that this was a mere formality. Petitioner admitted that he knew what the advice of rights form said. Simon advised Petitioner that he was being charged with first-degree murder and could receive a life sentence. Simon advised Petitioner that the best thing he could do was tell her what had happened. Simon discussed Petitioner's prior arrest for domestic violence, what the witnesses would testify to at trial, and indicated that as a result of this evidence, the jury would have no choice but

to find him guilty of first-degree murder. Petitioner claimed that he repeatedly told Simon that he did not know what had happened.

According to Petitioner, Simon promised Petitioner that if he confessed, she would have the charge reduced to manslaughter and he would only receive lifetime probation. Simon showed Petitioner paperwork from a case in which a suspect did not confess and ended up being found guilty and sent to prison. Petitioner believed that Simon was threatening to ruin his life by locking him up forever. Petitioner claimed that his statement was a theory of what had happened to the victim, based on what the police had related to him concerning the victim's murder. Petitioner testified that he confessed because he was scared and was being threatened with being sent to prison for the rest of his life. Petitioner admitted that he had recently written a letter to the police in which he requested further investigation of the murder. Petitioner agreed that Simon did not tell him what to say in his statement.

After hearing testimony and arguments, the trial court ruled that Petitioner's statement had been voluntarily made and could be admitted at his trial. The trial court determined that Petitioner had recently been arrested for another domestic violence matter involving the same victim, at which time he had the opportunity to review his constitutional rights and to understand them. The trial court found that Petitioner was a very well-read person, understood grammar, and had a good understanding of the English language, based upon the letter that he had written to the police. The trial court found that Simon's assertions that she did not make any promises to Petitioner were credible.

Petitioner was ultimately convicted at trial. Petitioner's conviction was affirmed on appeal. *People v. Epps*, No. 262287, 2006 WL 2818504 (Mich. Ct. App. Oct. 3, 2006), *leave denied*, 726

N.W.2d 27 (2007). Petitioner now seeks the issuance of a writ of habeas corpus on the ground that "[t]he conviction for the crime that I was charged with was based on a false, coerced confession."

II

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

III

Petitioner claims that the trial court erred in refusing to suppress his confession, primarily on the ground that his statement had been induced by false promises of leniency. In rejecting this

-5-

claim, the Michigan Court of Appeals noted that Petitioner was thirty-one years old when he spoke with the police. Petitioner was familiar with his constitutional rights from his prior arrest for assaulting his girlfriend on July 5, 2004. Petitioner spent a number of hours with the police, including the time he was being driven to the police station. At least two police officers spent time questioning Petitioner. Petitioner was advised of his rights and had an opportunity to review them. Petitioner put his initials by each of the rights explained to him and signed the waiver form. Investigator Simon testified that Petitioner did not appear to have any difficulty understanding his rights. Petitioner was given breaks and offered food and drink during the police questioning. Petitioner did not allege that he was abused or threatened. Although Petitioner argued that Simon promised to reduce the charge against him to manslaughter and to ensure that he receive a sentence of lifetime probation if he confessed, the trial court found Simon's testimony that she made no promises to be credible. Viewing the totality of the circumstance in this case, the Michigan Court of Appeals concluded that Petitioner's confession was voluntarily made. *People v. Epps*, 2006 WL 2818504, at *2.

The Fifth Amendment prohibits the prosecution's use of a criminal defendant's compelled testimony. *Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). The Due Process Clause of the Fourteenth Amendment likewise prohibits the admission at trial of coerced confessions obtained by means "so offensive to a civilized system of justice that they must be condemned." *Miller v. Fenton*, 474 U.S. 104, 109 (1985). An admission is deemed to be coerced when the conduct of law enforcement officials is such as to overbear the accused's will to resist. *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Beckwith v. United States*, 425 U.S. 341, 347-48 (1976)). An involuntary confession may result from psychological, not only physical, coercion or pressure

by the police. *Arizona v. Fulminante*, 499 U.S. 279, 285-89 (1991); *Miranda v. Arizona*, 384 U.S. 436, 448 (1966).

A federal court must look at the totality of the circumstances to determine whether a defendant's confession is voluntary. *Ledbetter*, 35 F.3d at 1067; *see also United States v. Thornton*, 177 F. Supp. 2d 625, 627 (E.D. Mich. 2001). "[F]actors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food or sleep." *Ledbetter*, 35 F.3d at 1067 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The Supreme Court has also stated: "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his [rights] . . . Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." *Miranda*, 384 U.S. at 475.

The state-court determination that Petitioner's confession was voluntary was not contrary to, or an unreasonable application of, clearly established federal law, and thus does not warrant federal habeas relief, despite Petitioner's claim of coercive police activity, where Petitioner was thirty-one years old at the time he made his statement, had prior contacts with the police and was familiar with criminal procedures, was not deprived of necessary nourishment, medical care, sleep, or other essentials while in custody, and was advised of his *Miranda* rights by police prior to being questioned and waived those rights. *See Payne v. Smith*, 207 F. Supp. 2d 627, 646 (E.D. Mich. 2002).

Moreover, although Petitioner claims that Simon promised that he would only be charged with manslaughter and receive lifetime probation if he confessed, Simon denied making such promises. The trial court found that Simon's testimony that she made no promises to Petitioner was credible.

In considering federal habeas petitions, a federal district court must presume the correctness of state-court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). Subsidiary factual questions in determining the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics alleged by a habeas petitioner, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton*, 474 U.S. at 112. In this case, the state trial court's finding that police made no promises and used no coercion to induce an incriminating statement from Petitioner, so that his statement was voluntarily made, is entitled to the presumption of correctness, because Petitioner has failed to present clear and convincing evidence to rebut this presumption. *Pritchett v. Pitcher*, 117 F.3d 959, 963-64 (6th Cir. 1997). Because Petitioner has failed to present clear and convincing evidence to rebut this presumption, he is not entitled to challenge the trial court's credibility determination concerning the voluntariness of his confession on habeas review. *See Walendzinski v. Renico*, 354 F. Supp. 2d 752, 760 (E.D. Mich. 2005).

### III

Based on the foregoing, the Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to Petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28

U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F. 3d 900, 901 (6th Cir. 2002). For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court will also deny Petitioner leave to appeal in forma pauperis, because the appeal would be frivolous.

IV

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**, and that Petitioner is **DENIED** leave to proceed in forma pauperis on appeal.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 24, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 24, 2008.

        s/Tracy A. Jacobs
        TRACY A. JACOBS